1
2
3
4

VENABLE LLP
Daniel S. Silverman (SBN 137864)
Email: dsilverman@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

5
6
7
8
9
10

THORPE NORTH & WESTERN LLP
Mark M. Bettilyon (Admitted *Pro Hac Vice*)
Email: mark.bettilyon@tnw.com
Peter M. de Jonge (Admitted *Pro Hac Vice*)
Email: dejonge@tnw.com
Jed H. Hansen (Admitted *Pro Hac Vice*)
Email: hansen@tnw.com
175 South Main, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 566-6633

11

Attorneys for Plaintiff ORGAIN, INC.

12

**UNITED STATES DISTRICT COURT**

13

**CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  ORGAIN, INC.,<br><br>16            Plaintiff,<br><br>17            v.<br><br>18  NORTHERN INNOVATIONS<br>HOLDING CORP. DBA PURELY<br>19  INSPIRED, a Canadian Corporation;<br>LAKESIDE INNOVATIONS HOLDING<br>20  CORP., a Canadian Corporation; IOVATE<br>HEALTH SCIENCES<br>21  INTERNATIONAL, INC., a Canadian<br>Corporation; IOVATE HEALTH<br>22  SCIENCES U.S.A., INC., a Delaware<br>Corporation; KERR INVESTMENT<br>23  HOLDING CORP., a Canadian<br>Corporation; DOES 1 and 2<br>24<br>25            Defendants. | Case No.: 8:18-cv-01253 JLS (ADSx)<br><br>**PLAINTIFF ORGAIN INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>PRETRIAL CONFERENCE<br>DATE:    February 18, 2022<br>TIME:    10:30 a.m.<br>CTRM:   10A<br>JUDGE:  Hon. Josephine L. Staton |

26
27
28

1

2

# TABLE OF CONTENTS

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.   SUMMARY OF THE CASE ...................................................................1

    A.   Orgain Is a Classic Success Story. ............................................1

    B.   The Success of Orgain's Trademark and Trade Dress ......................5

    C.   Iovate's Unlawful Conduct .......................................................7

    D.   The Orgain Trade Dress is Distinctive and Nonfunctional. .............10

    E.   Rampant Actual Consumer Confusion .......................................12

    F.   Likelihood of Confusion ........................................................13

II.  SUMMARY OF CLAIMS ..................................................................16

    A.   Summary Statement of Orgain's Claims .....................................16

    B.   Elements Required to Establish Orgain's Claims............................16

        1.   Claim I: Trade Dress Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)....................................................................16

        2.   Claim III: Trademark Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)....................................................................22

        3.   Claim IV:  Unfair Competition Under Cal. Bus. & Prof. Code §17200 ................................................................24

        4.   Claim V: False Advertising Under Cal. Bus. & Prof. Code §17500 ................................................................25

        5.   Claim VI: Common Law Trademark/Trade Dress Infringement and Unfair Competition ..................................25

    C.   Brief Description of Key Evidence in Support of Orgain's Claims. ..........................................................................26

        1.   Claim I: Trade Dress Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)....................................................................26

        2.   Claim III: Trademark Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)....................................................................31

        3.   Claim IV:  Unfair Competition Under Cal. Bus. & Prof. Code §17200 ................................................................31

      4.    Claim V: False Advertising Under Cal. Bus. & Prof. Code §17500 ................................................................32

      5.    Claim VI: Common Law Trademark/Trade Dress Infringement and Unfair Competition .....................32

   D.    Anticipated Evidentiary Issues ......................................32

**III.   AFFIRMATIVE DEFENSES AND ORGAIN'S RESPONSE. ...........32**

**IV.   BIFURCATION OF ISSUES (L.R. 16-4.3) ...........................444**

**V.    JURY TRIAL (L.R. 16-4.4) .............................................45**

   A. Legal Claims ..........................................................................45

   B. Equitable Claims....................................................................45

**VI.   ORGAIN IS ENTITLED TO DAMAGES.............................46**

**VII.  THE COURT SHOULD ENTER A PERMANENT INJUNCTION.................................................................48**

**VIII. ATTORNEY'S FEES (L.R. 16-4.5) ...................................49**

**IX.   ABANDONMENT OF ISSUES ......................................50**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*2Die4Kourt v. Hillair Capital Mgmt., Ltd. Liab. Co.*,
    692 F. App'x 366 (9th Cir. 2017) .................................................................. 41

*Adray v. Adry—Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1995) ......................................................................... 47

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir.1979) ................................................................. 21, 24

*Art Attacks Ink, LLC v. MGA Enter. Inc.*,
    581 F.3d 1138 (9th Cir. 2009) .................................................................... 20

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
    457 F.3d 1062 (9th Cir. 2006) .............................................................. 21, 22

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*,
    750 F.2d 903 (1984) ................................................................................... 45

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 33

*Borescopes R US v. 1800Endoscope.com, LLC*,
    728 F.Supp.2d 938 (M.D. Tenn. 2010) ...................................................... 18

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...................................................... 17, 22, 39

*Brother Records, Inc. v. Jardine*,
    318 F.3d 900 (9th Cir. 2003) ............................................................... 35, 40

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002) .................................................................... 34

*Cell-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    83 Ca. Rptr. 2d 548, 20 Cal. 4th 163. 180 (1999) ..................................... 24

*Centaur Communs., Ltd. v. A/S/M Communs.*, Inc.,
    830 F.2d 1217 (2d Cir. 1987) .............................................................. 20, 22

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ...................................................... 24, 25, 49

*Chanel, Inc. v. Doan*,
    No. C 05-03464 VRW, 2007 U.S. Dist. LEXIS 22691 (N.D. Cal. Mar.
    13, 2007) ..................................................................................................... 42

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*,
    468 F. Supp. 2d 1181 (C.D. Cal. 2007) ..................................................... 19

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) ........................................................................ 33

*Clicks Billiards, Inc. v. Sixshooters Inc.*,
  251 F.3d 1252, 1258 (9th Cir. 2001)...................................... 19, 21

*Computer Care v. Serv. Sys. Enters.*,
  982, F.2d 1063 (7th Cir. 1992) ............................................. 18

*Cont'l Ins. Co. v. Ursin Seafoods, Inc.*,
  No. 92-35023, 1992 U.S. App. LEXIS 25488 (9th Cir. Oct. 6, 1992) ...... 42

*CytoSport, Inc. v. Vital Pharms., Inc.*,
  617 F. Supp. 2d 1051 (E.D. Cal. 2009)..................................... 40

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998).............................................. 21

*E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*,
  905 F. Supp. 1403 (E.D. Cal. 1994)........................................ 38

*Eastman Kodak Co. v. Rakow*,
  739 F. Supp. 116 (W.D.N.Y. 1989) ........................................ 23

*Enesco Corp. V. Price/Costco Inc.*,
  146 F.3d 1083 (9th Cir. 1998)............................................. 25

*Fahmy v. Jay-Z*,
  2015 U.S. Dist. LEXIS 139298 (C.D. Cal. Oct. 9, 2015) ................... 46

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
  741 F. Supp. 2d 1165 (C.D. Cal. 2010).................................... 17

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
  198 F.3d 1143 (9th Cir. 1999)............................................. 33

*First Brands Corp. v. Fred Meyer, Inc.*,
  809 F.2d 1378 (9th Cir. 1987)............................................. 21

*Forschner Group v. Arrow Trading Co.*,
  904 F.Supp. 1409 (S.D.N.Y. 1995)......................................... 18

*Forschner Grp., Inc. v. Arrow Trading Co.*,
  30 F.3d 348 (2d Cir. 1994)................................................ 19

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
  618 F.3d 1025 (9th Cir. 2010)............................................. 35, 36

*Freixenet, S.A. v. Admiral Wine & Liquor Co.*,
  731 F.2d 148 (3d Cir. 1984)............................................... 18

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987)......................................... 16, 17, 22

*Funrise Can. v. Zauder Bros.*,
  1999 U.S. Dist. LEXIS 22431 (E.D.N.Y. July 2, 1999) ..................... 18

*Gibson Brands Inc. v. Viacom Int'l Inc.*,
  No. CV 12-10870 DDP (AJWx), 2016 U.S. Dist. LEXIS 203089
  (C.D. Cal. Sep. 29, 2016). .............................................. 42

*GoTo.com, Inc. v. Walt Disney Co.,*
202 F.3d 1199 (9th Cir. 2000)..................................................... 39

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*
736 F.3d 1239 (9th Cir. 2013)..................................................... 41

*Horphag Research Ltd. v. Garcia,*
475 F.3d 1029 (9th Cir. 2007)..................................................... 50

*Intel Corp. v. Hartford Acc. & Indem. Co.,*
952 F.2d 1551 (9th Cir. 1991)..................................................... 38

*International Order of Job's Daughters v. Lindeburg & Co.,*
633 F. 2d 912 (9th Cir. 1980)..................................................... 49

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
304 F.3d 829 (9th Cir. 2002).............................................. 37, 38

*JL Bev. Co., Ltd. Liab. Co. v. Beam, Inc.,*
318 F. Supp. 3d 1188 (D. Nev. 2018)................................... 20, 22

*Johnson v. Ford Motor Co.,*
35 Cal. 4th 1191 (2005)........................................................... 44

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,*
762 F.3d 867 (9th Cir. 2014)..................................................... 48

*Lanard Toys Ltd. v. Novelty Inc.,*
511 F. Supp. 2d 1020 (C.D. Cal. 2007)...................................... 17

*Levi Strauss & Co. v. Shilon,*
121 F.3d 1309 (9th Cir. 1997)................................................... 40

*Lindy Pen Co. v. Bic Pen Corp.,*
982 F.2d 1400 (9th Cir. 1993)................................................... 47

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
416 F.3d 940 (9th Cir. 2005)..................................................... 33

*Maier Brewing Co. v. Fleischmann Distilling Corp.,*
390 F.2d 117 (9th Cir. 1968)..................................................... 47

*Marketquest Grp., Inc. v. BIC Corp.,*
862 F.3d 927 (9th Cir. 2017)..................................................... 36

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
290 F. Supp. 2d 1083 (C.D. Cal. 2003)...................................... 40

*Mattel, Inc. v. Walking Mountain Productions,*
353 F.3d 792 (9th Cir. 2003)..................................................... 17

*McGurr v. N. Face Apparel Corp.,*
2021 U.S. Dist. LEXIS 196568 (C.D. Cal. Aug. 27, 2021)...................... 25

*Merriam-Webster, Inc. v. Random House, Inc.,*
35 F.3d 65 (2d Cir. 1994).......................................................... 18

*Miracle Blade, LLC v. Ebrands Commerce Group, LLC,*
  207 F.Supp. 2d 1136 (D. Nev. 2002) ........................................................ 18

*Miss World (UK), Ltd. v. Mrs. Am. Pageants, Inc.,*
  856 F.2d 1445 (9th Cir. 1988) ............................................................ 20, 22

*Mockler v. Multnomah Cty.,*
  Nos. 96-35895, 96-36122, 1998 U.S. App. LEXIS 6641 (9th Cir. Mar. 31, 1998) ................................................................................................ 43

*Momento, Inc. v. Seccion Amarilla USA,*
  U.S. Dist. LEXIS 62664 (N.D. Cal. July 6, 2009) .................................... 25

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
  319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................... 24

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cty.,*
  9 Cal. 5th 279, 261 Cal. Rptr. 3d 713, 462 P.3d 461 (Cal. 2020) ............. 45

*Nintendo of Am., Inc. v. Dragon Pac. Int'l,*
  40 F.3d 1007 (9th Cir. 1994) .................................................................... 47

*Nintendo of Am., Inc. v. Storman,*
  2021 U.S. Dist. LEXIS 148119 (C.D. Cal. August 5, 2021) ............... 41, 48

*Oakley, Inc. v. McWilliams,*
  No. CV 09-07666 DDP (RNBx), 2012 U.S. Dist. LEXIS 149604 (C.D. Cal. Oct. 17, 2012) ...................................................................... 43

*Official Airline Guides, Inc. v. Goss,*
  6 F. 3d 1385 (9th Cir. 1993) ..................................................................... 23

*Paramount Farms Int'l LLC v. Keenan Farms Inc.,*
  2012 U.S. Dist. LEXIS 190634 (C.D. Cal. Nov. 28, 2012) ...................... 18

*Perfumebay.com Inc. v. eBay Inc.,*
  506 F.3d 1165 (C.D. Cal. 2007) ............................................................... 48

*Playboy Enters., Inc. v. Baccarat Clothing Co.,*
  692 F.2d 1272 (9th Cir.1982) ................................................................... 45

*Reno Air Racing Ass'n v. McCord,*
  452 F.3d 1126 (9th Cir. 2006) .................................................................. 49

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
  944 F.2d 597 (9th Cir. 1991) .................................................................... 49

*Rodeo Collection Ltd. v. West Seventh,*
  812 F.2d 1215 (9th Cir. 1987) .................................................................. 23

*Scat Enters. v. FCA US Ltd. Liab. Co.*
  No. CV 14-7995-R, 2017 U.S. Dist. LEXIS 207149 (C.D. Cal. June 8, 2017) ......................................................................................................... 43

*Seabrook Foods, Inc. v. Bar-Well Foods Ltd.,*
  568 F.2d 1342 (CPPA 1977) .................................................................... 17

ORGAIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
    59 F.3d 902 (9th Cir. 1995).................................................................... 24

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
    96 F.3d 1217 (9th Cir. 1996).................................................................. 17

*Shuffle Master, Inc v. Awada*,
    2006 U.S. Dist. LEXIS 66418 (D. Nev. Aug. 31, 2006) ......................... 19

*Simon v. San Paolo U.S. Holding Co., Inc.*,
    35 Cal. 4th 1159 (2005)......................................................................... 44

*Spark Indus., LLC v. Kretek Int'l, Inc.*,
    No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538 (C.D.
    Cal. Aug. 28, 2014) ............................................................................... 19

*Sports Traveler v. Advance Magazine Publrs.*,
    25 F.Supp.2d 154 (S.D.N.Y. 1998) ........................................................ 19

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)............................................................................... 44

*Stork Restaurant Inc. v. Sahati*,
    166 F.2d 348 (9th Cir. 1948).................................................................. 23

*Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001).................................................................. 48

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) .............................................................................. 23

*United States v. Hemmen*,
    51 F.3d 883 (9th Cir.1994).................................................................... 39

*Vision Sports, Inc. v. Melville Corp.*,
    888 F.2d 609 (9th Cir. 1989).................................................................. 20

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).................................................................. 33

**Statutes**

15 U.S.C. § 1115(b)(4) ................................................................... 34, 35, 36

15 U.S.C. § 1125(A) ............................................................................ passim

9th Cir. Civ. Jury Instr. § 15.6 ..................................................................... 16

**Other Authorities**

Cal. Civ. Code § 3294........................................................................... 47

California Business and Professions Code § 17200 ...................................... 24, 45

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ........................................... 32, 33

ORGAIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to L.R. 16-4, Orgain submits this Memorandum of Contentions of Fact and Law.

## I.      SUMMARY OF THE CASE

### A. Orgain Is a Classic Success Story.

Plaintiff Orgain, Inc. ("Orgain" or "Plaintiff") sued the Defendants in this action (collectively referred to herein as "Iovate") because Iovate copied Orgain's trade dress resulting in widespread consumer confusion and damage to Orgain. The ORGAIN ORGANIC PROTEIN brand and its attendant trade dress was inspired by Dr. Andrew Abraham's training in medicine and his experience as a cancer survivor. Dr. Abraham founded Orgain in 2009 with a focus on healthy, natural products that he found were not available as a supplemental food source for cancer patients. His first product, pictured below in its first and an updated iteration, was ORGAIN ORGANIC NUTITION. That product was very successful at its introduction and appealed to many consumers who had problems digesting conventional protein shakes.

          

**Original**                    **First Update**

Several years later, in 2013, Dr. Abraham created the product and brand at issue in this dispute, ORGAIN ORGANIC PROTEIN. In January of 2014, the ORGAIN ORGANIC PROTEIN branded plant-based protein powder officially hit shelves and was an immediate success.

Indeed, in 2014, only one year after it launched, the new ORGAIN
ORGANIC PROTEIN products made up at least 46% of the company's total sales.
In 2015, those products comprised the majority of Orgain's sales and have
dominated the company's sales ever since. The trade dress associated with
Orgain's plant-based best-seller is the basis for the present suit. As defined in its
pleadings, the Orgain Trade Dress comprises:

- the mark ORGANIC PROTEIN in a unique, black font against a white
background;

- Orgain's ORGANIC PROTEIN mark is located just above the center
of the container;

- with its house brand located above the ORGANIC PROTEIN
mark;

- the ORGANIC PROTEIN mark is framed inside green bands that
circumscribe the top and bottom portions of the container;

- the front label incorporates a green leaf and colored circles highlighting the
dietary profile of the product.

*See*, ¶ 28 of First Amended Complaint, Dkt. No. 53.

Other Orgain products also employ the Orgain Trade Dress. For example, in
2015, Orgain introduced a ready-to-drink (RTD) almond milk that also used the

1  Orgain Trade Dress. From 2017 to 2018, Orgain also sold an RTD version of its

2  plant-based protein powder using the same Orgain Trade Dress.[1]

 

11      Over time, slight changes have been made to the ORGAIN ORGANIC

12  PROTEIN label. Orgain anticipates that Iovate will argue that these changes limit

13  Orgain's ability to claim trade dress rights. Iovate is wrong, however, as Orgain's

14  flagship products have always retained all of the elements of the Orgain Trade

15  Dress. Those changes are as shown below for the Court and will also be presented

16  to the jury:

   

**2014-2017**       **2015-2017**       **2017-2021**       **2021**

26      Orgain has marketed and sold more products than just those having the

---

28  [1] The almond milk and RTD plant-based proteins are complementary non-dairy protein products sold to consumers of Orgain's plant-based powders.

Orgain Trade Dress. Since as early as 2014, Orgain developed a blue trade dress package that is complementary to the Orgain Trade Dress. Those complementary labels, clearly conveying a similar impression to consumers, are often seen side-by-side in the marketplace with the Orgain Trade Dress that Iovate copied. Images of different iterations of a few of Orgain's blue-themed products are presented below to provide the Court with background and context.

   

 

 

Indeed, since the initial introduction of the ORGAIN ORGANIC PROTEIN plant-based powder line, Orgain has expanded its different product offerings to include a wide range of supplement products, many of which have different trade dress than that at issue in the present dispute. Additionally, while Orgain has also

4

1 sold limited seasonal releases of its ORGAIN ORGANIC PROTEIN products,

2 Orgain's green-themed plant-based powder line shown above, remained (and

3 remains today) Orgain's flagship product, comprising the dominant portion of

4 Orgain's sales. The popularity of Orgain's green plant-based powder flagship

5 product is followed closely by products depicting its blue trade dress.  Because of

6 the complementary nature of these trade dresses, sales, marketing and promotional

7 expenses related to all of these products have helped reinforce consumer

8 recognition of the Orgain Trade Dress.

9    **B. The Success of Orgain's Trademark and Trade Dress**

10       As noted above, Orgain's most popular product by far is its ORGAIN

11 ORGANIC PROTEIN plant-based powder and RTDs. Starting in January of 2014,

12 Orgain consistently marketed and promoted this product with the same unique

13 trade dress elements (the "Orgain Trade Dress"). These plant-based powders and

14 RTDs have also been consistently marked with the ORGAIN ORGANIC

15 PROTEIN mark (the "Mark"), commencing in January of 2014. As a consequence,

16 Orgain has strong rights in both the Mark and the Orgain Trade Dress.

17       Different iterations of Iovate's infringing product were introduced at

18 different periods of time. As such, evidence related to the strength of the Orgain

19 Trade Dress and Mark required to demonstrate confusion related to those different

20 products varies with the time period in which the infringing product was

21 introduced. While sales and marketing information for other years will be

22 presented to the jury to demonstrate the strength of the Orgain Trade Dress and the

23 development of Orgain's rights over time, Orgain focuses the following discussion

24 on 2014 and 2015, the time period prior to Iovate's first infringing product, which

25 was introduced no earlier than October 2015.

26       In 2014, sales and marketing expenditures for products with the Orgain

27 Trade Dress and Mark exceeded $4 million. In 2015, Orgain spent $10 million on

28 the same. During that time, products with the Orgain Trade Dress made up more

than 90% of all sales of products with the Mark. Meaning, in two years, there was almost $14 million in sales, promotional, and marketing expenditures for products with the Orgain Trade Dress and the Mark. Orgain's sales, marketing, and promotional expenditures included in-store demonstrations and circulars, coupon programs, and online and social media advertisements.

In addition to the above-mentioned efforts, Orgain participated in the Expo West trade show in Anaheim in 2014 and 2015 with attendance of 67,000 and 71,000, respectively. The Orgain Trade Dress was featured at both. Also, in 2014 and 2015, the Orgain Trade Dress was featured at different athletic events, including the San Francisco Marathon. Moreover, in 2014, Orgain ran an advertising campaign with *Vegan Health and Fitness* magazine that prominently featured the Orgain Trade Dress and Mark. Orgain also featured the Orgain Trade Dress on its website in 2014, which had about 13,000 views. In January of 2015, the Orgain Trade Dress was featured prominently in the printed publication having the largest circulation in the U.S.: the *Costco Connection* which reaches over 8.5 million households. In February of 2015, both the Orgain Trade Dress and the Mark were shown in *Fitness Magazine* which has a circulation of about 1.5 million. In November of 2015, one of the most famous fitness celebrities in the country, Jillian Michaels, promoted the Orgain Trade Dress as well as the Mark on YouTube.

The results of Orgain's sales and promotional expenditures were significant. By 2015, the views of the Orgain Trade Dress and the Mark on Orgain's webpage had leaped to almost 30,400 views *per month*. In its first year alone, Orgain sold $15,841,005 in ORGANIC PROTEIN branded products, $14,942,740 of which was for its flagship plant-based product. In 2015, its sales more than doubled to $38,564,746; $34,551,026 of those sales having the Orgain Trade Dress. Indeed, by the end of 2015, Orgain was the third largest meal replacement and powder supplement company in the natural food channel. Two of the building blocks of

1   this accomplishment were the Mark and the Orgain Trade Dress. To date, Orgain

2   has sold hundreds of millions of dollars of product bearing the Orgain Trade Dress

3   and Mark.

4       **C. Iovate's Unlawful Conduct**

5       Prior to 2014, Iovate marketed a nutritional supplement in pill form (see below)

6   under the brand Purely Inspired online and in different stores throughout the

7   United States.

8

9

10

11   

12

13

14

15       Iovate acknowledges that Purely Inspired's business model is that of a copycat.

16   Rather than create its own unique products, Purely Inspired evaluates the

17   competition looking for new successful products that it can copy. Following this

18   trend, approximately 10 months after Orgain's Organic Protein product hit store

19   shelves, Iovate launched two competing products. The first, which Iovate called

20   "Purely Inspired 100% Plant-Based Protein," is shown below.

21

22

23

24   

25

26

27

28       Near the same time as the release of its Purely Inspired 100% Plant-Based

Protein product, Iovate also launched an "Organic Protein" branded product under its Nature's Food brand. The Nature's Food Organic Protein product was sold for a limited period of time in GNC stores. An image of that product is provided below.



Neither the Nature's Food Organic Protein nor the Purely Inspired 100% Plant Based Protein had much commercial success. However, both products show that Iovate is capable of creating trade dress—even trade dress using the term "Organic Protein" —without employing all of the elements of Orgain's trade dress.

Because these products were unsuccessful, in July of 2015 Iovate commissioned a study to evaluate what it was that consumers liked about Orgain's ORGANIC PROTEIN product.  In this study, images of the ORGAIN ORGANIC PROTEIN product were shown to consumers. Consumers were asked if they were likely to purchase the Orgain product, what they liked or disliked about the product, what the value was, if it was new and different from other products, and if the Orgain packaging design makes them more or less likely to consider purchasing the product.[2]  Armed with these survey results, Iovate introduced its first infringing product no earlier than October 31, 2015[3], shown below next to Orgain's flagship product.

---

[2] Iovate also tested consumer responses to Orgain's ORGANIC PROTEIN brand on numerous other occasions. Most consumers tasting Orgain's product preferred its flavor to that of Iovate.

[3] While Iovate asserts that this is the date the label was first introduced, it has never explained how long it took for this new label to completely replace the prior label in the marketplace.



In July of 2017, apparently not happy with the sales of the first infringing product, Iovate moved closer to Orgain, who it referred to as its "leading competitor," by changing the font of its label to match Orgain's font. In 2018, after conducting tastes tests against Orgain's shakes (which Iovate considered to be the "gold standard" to consumers), Iovate launched a plant-based RTD shake. Iovate's second infringing powder and first infringing RTD are pictured below next to Orgain's flagship product for reference.

  

During the pendency of this lawsuit, Iovate introduced its third infringing powder (in approximately January of 2021) and second infringing RTD (in approximately November of 2020); (both pictured below next to the Orgain product-at-issue).

1
2
3
4
5
6
7

 

8 **D. The Orgain Trade Dress is Distinctive and Nonfunctional.**

9   Evidence at trial will demonstrate that there would be no confusion amongst

10 consumers of Orgain and Iovate's infringing product unless there was consumer

11 recognition of the Orgain Trade Dress and Mark. Moreover, Iovate's blatant

12 copying of the Orgain Trade Dress also demonstrates, at least indirectly, consumer

13 confusion. To wit, with a host of design alternatives available, Iovate tested

14 Orgain's label with consumers and chose a label that looks exactly like that of

15 Orgain. Iovate would have absolutely no reason to do that unless there was

16 marketplace recognition of the Orgain Trade Dress from which it wanted to

17 benefit. That evidence alone is sufficient support to conclude that the Orgain Trade

18 Dress is distinctive and/or has secondary meaning.

19   Iovate's chief defense to its copying is that it is entitled to copy every aspect

20 of Orgain's label because some of the individual elements of the Orgain Trade

21 Dress can be found on other products in the marketplace.  Iovate makes this

22 argument even though no other product (besides Iovate's) incorporates all of the

23 individual elements of the Orgain Trade Dress. Using Iovate's logic, it would be

24 entitled to substitute only the term Purely Inspired for the term Orgain on Orgain's

25 label (as shown on the following page) and sell the product to consumers.

26
27
28

This outcome is, of course, preposterous. The Orgain Trade Dress is an arbitrary, inherently distinctive combination of different elements that no one in the marketplace—except Iovate—has adopted. While Iovate has found a few products with a few of the elements of the Orgain Trade Dress, none of the witnesses that have evaluated the trade dress (including Orgain witnesses Dr. Abraham, Stephen Hennessey, and Todd Dieudonne, and Iovate witnesses Robert Frank and Briana Rice) have located any other products – apart from Orgain and Iovate – which contain all the asserted trade dress elements.

Perhaps the most authoritative work was done by Orgain's expert, Shane McCassy, who performed a detailed study of plant-based protein sales from December 4, 2016 through 2020. This study identified the top 95% of products sold in that category throughout the United States. McCassy found there is not a **single** product, other than Iovate, that has used each and every element of the Orgain Trade Dress. Indeed, this study and the testimony of Orgain and Iovate witnesses demonstrates that the Orgain Trade Dress as a whole is unique within the plant-based protein field. This evidence also demonstrates that the Orgain Trade Dress is not functional because it is not the cheapest or most efficient way to package and label products, nor is any competitor put at a non-reputation-related disadvantage by not being able to use the Orgain Trade Dress.

The Orgain Trade Dress also has acquired distinctiveness and achieved "secondary meaning."  In addition to its significant market success, efforts to expose millions of consumers to the Orgain Trade Dress, evidence of consumer

11

confusion, and Iovate's copying, Orgain conducted a consumer survey of
marketplace recognition of the Orgain Trade Dress. That study conducted by
Orgain expert Dr. Michael Belch indicated that at least 36% of consumers identify
the Orgain Trade Dress as emanating from a single source.

### E. Rampant Actual Consumer Confusion

Due at least to consumer recognition of the Orgain Trade Dress and Mark,
actual consumer confusion between Orgain and Iovate's infringing product is
widespread. Dozens of consumers on Amazon.com have left reviews of the
infringing product, noting that they believed they were purchasing Orgain's
product. For example, on or about November 5, 2017, Amazon buyer Honest
Reviewer left a one-star review of Iovate's infringing product, stating the
following: "DON'T BUY!!!  Bought this thinking it was Orgain on accident
(which I use daily and absolutely love)."[4]

In addition, dozens of other consumers have contacted Orgain to complain
about their "Orgain" product, only to find out they had actually purchased Iovate's
infringing product. For example, one customer contacted Orgain with the
following message: "Any chance you can look into the similarities of 'Purely
Inspired' packaging? I bought it on Amazon thinking it was your company's
product and upon getting it realized it wasn't Orgain!"  He noted: "the thing that
throws people off is the big bold lettering stating 'ORGANIC PROTEIN'. I
thought initially this was just an Orgain packaging thing which is how I was duped
into getting the Purely Inspired one." Further, dozens of consumers and even paid
Orgain ambassadors have posted photos of Iovate's infringing product on social
media believing that it was an Orgain product.

---

[4] Staring down the barrel of the mounting evidence of significant actual confusion,
Iovate's only hope is to keep the jury from hearing this damning evidence and/or to
suggest to the jury that Orgain somehow made it up. It would be legal error and
manifestly unjust to keep the evidence of actual confusion from the fact finder or
allow Iovate to mislead the jury in this way.

Even trained professional marketers are confused between Orgain's ORGANIC PROTEIN brand and Iovate's infringing product. During two different marketing campaigns, two different marketing companies were hired by Orgain to place ORGANIC PROTEIN branded marketing materials on store shelves. Literally hundreds of times, employees of those marketing companies accidentally placed Orgain's marketing materials in front of Iovate's infringing product. For one of these companies, this occurred even after they were given very specific instructions to avoid placing materials on Iovate's infringing product.

In addition to the rampant marketplace confusion, consumer survey expert Hal Poret designed and conducted a survey to test the likelihood of confusion between Iovate's infringing products and Orgain's products. The survey found a confusion rate of 26.5% between the infringing RTD product and Orgain's trade dress. The survey also found a confusion rate of 17% between the infringing powder product and Orgain's trade dress. Mr. Poret also designed two other surveys related to Iovate's infringing products. Mr. Poret's second survey found a net confusion rate for the infringing RTD product and infringing powder product to be 28% and 30.6%, respectively. Mr. Poret's third survey, which tested Iovate's most recent infringing label, found a net confusion rate for the infringing RTD product and infringing powder product to be 25.3% and 24%, respectively. These rates are far greater than the typical level of 15% confusion that is frequently found to establish a strong likelihood of confusion. In the plant-based protein market, where sales are in the hundreds of millions, these rates of consumer confusion are significant.

## F. Likelihood of Confusion

Not only is actual confusion rampant, but not surprisingly, the likelihood of confusion in this case is also significant. The key inquiry of an infringer's use of a mark is whether it creates a likelihood that the consuming public will be confused as to who makes what product.

1       The similarity between marks has always been a critical question in the

2   likelihood of confusion analysis. In this case, the similarities between the marks

3   are significantly accentuated by Iovate's near identical incorporation of the Orgain

4   Trade Dress on its own product. Ironically, one of Iovate's own expert witnesses,

5   Robert Frank, noted in his report that "one cannot avoid noticing the similarities

6   between the Purely Inspired and Orgain" packaging. Any minor differences

7   between the two competing labels are trivial distinctions, especially when viewing

8   the products as they appear in the marketplace.

9       Related goods are more likely than non-related goods to confuse the public

10   as to the producers of the goods. As such, a diminished standard of similarity is

11   applied when comparing the marks of closely related goods. Here, the products are

12   virtually identical. Accordingly, less similarity is required to find a likelihood of

13   confusion. Moreover, convergent marketing channels increase the likelihood of

14   confusion. In this case, there is no dispute that the Parties sell their respective

15   goods through the exact same marketing channels and the products often appear

16   side-by-side on shelves in the marketplace.

17       The "strength" of a trademark or the scope of protection that is afforded a

18   trademark, is proportional to the degree to which a senior user's mark can be

19   extended to different marks and/or different goods. The greater the scope, the

20   greater the protection. While Iovate contests this issue, the Orgain Trade Dress is

21   inherently distinctive and hence it is strong. The ORGAIN ORGANIC PROTEIN

22   Mark is a composite mark that is likewise inherently distinctive and thus is also

23   strong. Irrespective, in the instant case, there is no evidence on record of any third-

24   party that has adopted the Orgain Trade Dress for use in connection with <u>any</u>

25   products or services, much less for use in connection with a plant-based protein

26   product. Iovate is the only party to adopt the Orgain Trade Dress. Iovate will

27   undoubtedly argue that the Orgain Trade Dress and Mark are weak, which Orgain

28   disputes. But irrespective of that argument, even "weak" trademarks should be

1  protected to avoid consumer confusion. Here, there is no question but that Orgain

2  has trademark rights, weak or strong. And Iovate is standing right on top of them.

3  The irrefutable likelihood of confusion in this case is supported further by

4  the fact that consumers of plant-based proteins are not purchasing luxury goods

5  where they labor over their purchase decision. Indeed, in Iovate's own words, its

6  consumers are "time stressed" and "will shop and quickly explore nutrition." In

7  like manner, some of Orgain's customers pay attention to product labels, some do

8  not. Consumers that may pay attention to labels at first, pay less attention once

9  they find a product they like. Importantly, where products are relatively

10 inexpensive, there is a higher likelihood that consumers will be confused because

11 they use less care while shopping. Here, the products are sold side-by-side for less

12 than $20. Because they are low cost, the degree of care exercised by consumers is

13 low.

14 In sum, Iovate clearly ignored its obligation to avoid confusion. Iovate could

15 have easily chosen other packaging and other marks. It could have placed its marks

16 in a different font and in a different location on the product with different colors

17 and shapes. It did not do so. Instead, it chose consciously and knowingly to

18 extensively copy Orgain to reap financial gain.

19 The end result of Iovate's intentional unlawful behavior has been, and

20 continues to be, irreparable harm and damage to Orgain and its reputation. Orgain

21 has lost substantial sales as a result of Iovate's infringement, and Orgain's control

22 over its brand has been significantly compromised. Orgain is entitled to damages

23 adequate to compensate for Iovate's infringement, false advertising, and unfair

24 competition. Orgain's damages include the cost of corrective advertising that

25 would be designed to help mitigate, to the extent possible, the confusion and

26 reputational harm caused by Iovate's unlawful behavior. Orgain is also entitled to

27 enhanced damages in view of Iovate's gross and willful acts pursuant to federal

28 law and exemplary damages under California state law.

## II.     SUMMARY OF CLAIMS

### A. Summary Statement of Orgain's Claims

Claim I: Trade Dress Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A) as to the Orgain Trade Dress.[5]

Claim III: Trademark Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A) as to ORGAIN ORGANIC PROTEIN.

Claim IV: Unfair Competition Under Cal. Bus. & Prof. Code §17200 as to the Orgain Trade Dress.

Claim V: False Advertising Under Cal. Bus. & Prof. Code §17500 as to the Orgain Trade Dress.

Claim VI: Common Law Trademark Infringement and Unfair Competition

### B. Elements Required to Establish Orgain's Claims

The following is a statement of elements required to establish each of Orgain's claims.

#### 1. Claim I: Trade Dress Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)

In the Ninth Circuit, trade dress infringement is demonstrated when the plaintiff proves by a preponderance of the evidence the following three elements:

(i) Orgain owns the trade dress;

(ii) Orgain's trade dress is protectable; and

(iii) Iovate used an overall appearance and visual impression similar to Orgain's trade dress without Orgain's consent in a manner that is likely to cause confusion among ordinary consumers. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987); 9th Cir. Civ. Jury Instr. § 15.6.

---

[5] While Orgain reserves its right to appeal at the conclusion of the trial, Claim II: Trademark Infringement Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A) as to ORGANIC PROTEIN will not be part of the issues presented at trial.

**(i)    Orgain Owns the Trade Dress in Question.**

"To establish a claim of trade dress or trademark infringement under the Lanham Act," Orgain must demonstrate ownership of a trade dress. *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1040 (C.D. Cal. 2007) (citing *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

**(ii)    The Orgain Trade Dress is Protectable.**

To demonstrate that an unregistered trade dress is protectable, Orgain must prove by a preponderance of the evidence the following two elements:

1. The trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning; and

2. The trade dress is non-functional.

See *Fuddruckers*, 826 F.2d at 841; *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808 n.14 (9th Cir. 2003).

**a.  The Orgain Trade Dress is Inherently Distinctive.**

To determine whether an unregistered trade dress is inherently distinctive, the jury will evaluate whether (1) the design as a whole is a common, basic shape or design, (2) is unique or unusual in the field of plant-based protein powder, (3) it not a mere refinement of a commonly-adopted and well-known form of ornamentation for plant-based protein powder, and (4) whether the Orgain Trade Dress was capable of creating a commercial impression distinct from any accompanying words by themselves. *See Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1176 (C.D. Cal. 2010) (citing *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (CPPA 1977). Where different

17

competitors separately employ different elements of a trade dress, "the key inquiry is whether the combination of **all** the elements conveys an overall impression of distinctiveness." *Paramount Farms Int'l LLC v. Keenan Farms Inc.*, 2012 U.S. Dist. LEXIS 190634, *14 (C.D. Cal. Nov. 28, 2012) (quoting *Miracle Blade, LLC v. Ebrands Commerce Group, LLC*, 207 F.Supp. 2d 1136, 1153 (D. Nev. 2002) (emphasis added).

With respect to the final factor noted above, when a "plaintiff's overall trade dress is distinctive, the fact that it uses descriptive (or generic) elements does not render it nonprotectable." *Computer Care v. Serv. Sys. Enters.*, 982, F.2d 1063, 1069 (7th Cir. 1992). "[T]he style and placement of a generic word may be protected as an element of trade dress . . . ." *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994). *See also Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 153 (3d Cir. 1984) (holding that plaintiff can prove secondary meaning of a trade dress even though one element itself is unprotectable).

Put another way, "[t]he non-exclusivity of any element of the latecomer's trade dress does not prevent that element from contributing to the confusion of the competing goods in the consumer's mind and therefore is not excused from a court's analysis of whether such confusion is likely . . . Thus [defendant] cannot avoid a finding of consumer confusion by arguing that (1) 'Swiss Army Knife' is generic . . . ." *Forschner Group v. Arrow Trading Co.*, 904 F.Supp. 1409, 1422-23 (S.D.N.Y. 1995). *See also Borescopes R US v. 1800Endoscope.com, LLC*, 728 F.Supp.2d 938, 949 (M.D. Tenn. 2010) ("Although genericness prevents a word or phrase from attaining trademark protection, it does not prevent a court from determining whether a competitor's later use of that word or phrase is unfair."); *Funrise Can. v. Zauder Bros.*, 1999 U.S. Dist. LEXIS 22431, at *50 (E.D.N.Y. July 2, 1999) (analyzing the "generic name" of the products as part of the trade dress analysis); *Sports Traveler v. Advance Magazine Publrs.*, 25 F.Supp.2d 154,

18

163 (S.D.N.Y. 1998) (analyzing the generic term "sports" as part of the trade dress analysis). In other words, even if a term is generic, a junior user has an obligation to avoid infringement and confusion. *See Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1195-96 (C.D. Cal. 2007) ("Even though kettle is a generic term … CFI nonetheless has an obligation to identify its product lest it be mistaken for that of KFI."); *Forschner Grp., Inc. v. Arrow Trading Co.*, 30 F.3d 348, 360 (2d Cir. 1994) ("Arrow's use of the phrase Swiss Army knife is permissible only to the extent that such use does not engender a likelihood of confusion as to the source of Arrow's product . . . If Arrow wishes to market a Swiss Army Knife, it may do so only in a manner that would not mislead the public into believing the knife was manufactured by Victorinox or Wenger.").

### b.  The Orgain Trade Dress Has Acquired Distinctiveness.

In the unlikely event that the Orgain Trade Dress is not deemed inherently distinctive, it most certainly has acquired distinctiveness through secondary meaning. When the total image and overall appearance of a product conveys to consumers that the product comes from a particular source, regardless of whether consumers know who or what that source is, the trade dress has acquired distinctiveness through secondary meaning. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258, 1262 (9th Cir. 2001); *Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538, at *29-30 (C.D. Cal. Aug. 28, 2014); *Shuffle Master, Inc v. Awada*, 2006 U.S. Dist. LEXIS 66418, *6 (D. Nev. Aug. 31, 2006).

In analyzing whether a trade dress has acquired distinctiveness or secondary meaning, the Ninth Circuit looks to the following factors:

1. The length of time and manner in which the asserted trade dress has been used;

2. The nature and extent of the trade dress owner's advertising and promotion of its trade dress;

3. Whether the accused infringer intentionally copied the trade dress;

4. Whether the people who purchase the products associate the trade dress with the owner of the trade dress;

5. Whether the trade dress owner successfully used the claimed trade dress to increase sales;

6. Whether the trade dress owner's use of the claimed trade dress was exclusive; and

7. Actual confusion among consumers.

*See Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

Secondary meaning is measured among prospective purchasers of the kinds of products at issue in this case; namely, plant-based protein powders and shakes. *See Centaur Communs., Ltd. v. A/S/M Communs.*, Inc., 830 F.2d 1217, 1221-1222 (2d Cir. 1987) (seminal case explaining that the relevant consuming public is that of products of the type at issue in the case – not the general population); *see also JL Bev. Co., Ltd. Liab. Co. v. Beam, Inc.*, 318 F. Supp. 3d 1188, 1205 (D. Nev. 2018) ("A mark's commercial strength is based on actual marketplace recognition. [] Commercial strength thus refers to [a mark's] degree of recognition in the minds of the relevant customer class."); *Miss World (UK), Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1450 (9th Cir. 1988) (analyzing perception of the relevant beauty pageant market – not the public generally).

### c.  The Orgain Trade Dress is Not Functional.

At trial, Orgain will demonstrate by a preponderance of the evidence that the Orgain Trade Dress is not functional. Trade dress is functional and cannot serve as a trademark, if taken as a whole, (1) the trade dress is essential to the use or purpose of the article or (2) affects the cost or quality of the article; that is if exclusive use of the feature would put competitors at a significant, non-reputational disadvantage. *See*, Summary Judgment Order at 23, Dkt # 184.

1   "Functional aspects of a trade dress make the product easier to use or cheaper to

2   manufacture." *Id*. (citing *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378,

3   1381-1382 (9th Cir. 1987)). "Features that are arbitrarily affixed or included for

4   aesthetic purposes are generally non-functional." *Id*. (citing *Clicks Billiards, Inc.*

5   251 F.3d at 1260). *See also, Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158

6   F.3d 1002, 1006 (9th Cir. 1998) (evaluating several factors to assess functionality

7   including whether the trade dress provides a utilitarian advantage, whether

8   alternative designs are available, whether advertising touted the utilitarian

9   advantages of the design, and whether the trade dress results from a comparatively

10  simple or inexpensive method of manufacture.)

11       Lastly, "in evaluating functionality as well as the other elements of a trade

12  dress claim, it is crucial that we focus not on the individual elements, but rather on

13  the overall visual impression that the combination and arrangement of those

14  elements create." *See Clicks*, 251 F.3d at 1259

15       **(iii)   Iovate's Trade Dress is Likely to Cause Confusion with the**

16            **Orgain Trade Dress.**

17       In determining likelihood of confusion, the Ninth Circuit looks to the

18  *Sleekcraft* factors:

19       1.  Similarity of the asserted and accused trade dress.

20       2.  Similarity of the goods that use the trade dress.

21       3.  Overlap between marketing and advertising channels.

22       4.  Strength or weakness of the asserted trade dress.

23       5.  Actual confusion.

24       6.  Accused infringer's intent.

25       7.  Consumer degree of care.

26       *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062,

27  1075-76 (9th Cir. 2006); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th

28  Cir.1979).

21

Confusion is not limited to confusion by a customer at the point of sale. Likelihood of confusion may also be demonstrated through:

1. Confusion as to sponsorship or approval. 15 U.S.C. § 1125(a)(1)(A); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999).

2. Initial interest confusion. *Id.*

3. Post-sale confusion. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d at 1077.

The likelihood of confusion analysis focuses on the confusion amongst prospective purchasers of the kinds of products at issue in the case. *See Centaur Communs.*, 830 F.2d at 1221-1222; *see also JL Bev. Co., Ltd. Liab. Co.*, 318 F. Supp. 3d at 1205 ("A mark's commercial strength is based on actual marketplace recognition. [] Commercial strength thus refers to [a mark's] degree of recognition in the minds of the relevant customer class."); *Miss World (UK), Ltd.*, 856 F.2d at 1450 (analyzing perception of the relevant beauty pageant market – not the public generally).

## 2. Claim III: Trademark Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)

In the Ninth Circuit, trademark infringement is demonstrated when the plaintiff proves by a preponderance of the evidence the following three elements:

(i) Orgain owns the mark ORGAIN ORGANIC PROTEIN;

(ii) ORGAIN ORGANIC PROTEIN is protectable; and

(iii) Iovate used a word, term, or device without Orgain's consent in a manner that is likely to cause confusion between Orgain's ORGAIN ORGANIC PROTEIN mark and Iovate. *See Fuddruckers, Inc.* 826 F.2d at 841.

### (i)    Orgain Owns the ORGAIN ORGANIC PROTEIN Mark.

For brevity, Orgain notes that the legal standard for ownership (i.e., showing

1  prior use) is the same for the Orgain Trade Dress as it is for the ORGAIN

2  ORGANIC PROTEIN trademark provided above.

3  **(ii)    ORGAIN ORGANIC PROTEIN is Protectable.**

4  The scope of judicial protection against infringement depends upon the

5  mark's distinctiveness. Certain marks are deemed inherently distinctive, and

6  afforded the greatest protection, because their intrinsic nature serves to identify a

7  particular source of a product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763,

8  768 (1992). Fanciful, arbitrary and suggestive marks are considered "inherently

9  distinctive." *Id*. A fanciful mark is a coined word or phrase, such as Kodak,

10  invented solely to function as a trademark. *See Eastman Kodak Co. v. Rakow*, 739

11  F. Supp. 116 (W.D.N.Y. 1989). An arbitrary mark consists of common words

12  arranged in an arbitrary way that is non-descriptive of any quality of the goods or

13  services. *See Stork Restaurant Inc. v. Sahati*, 166 F.2d 348, 355 (9th Cir. 1948)

14  ("[The Stork Club] is in no way descriptive of the appellant's night club, for in its

15  primary significance it would denote a club for storks."). A suggestive mark

16  requires imagination to make a connection between the mark and an attribute of the

17  product. *Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir.

18  1987).

19  In contrast to fanciful, arbitrary, and suggestive marks, a descriptive mark is

20  not inherently distinctive. *Two Pesos*, 112 S. Ct. at 2757. When used to describe a

21  product, a descriptive mark does not inherently identify a particular source, and

22  therefore cannot be protected. *Id*. It may nevertheless be entitled to protection if it

23  has acquired distinctiveness through secondary meaning. *Id*. A generic term can

24  never receive trademark protection. *Id*.

25  While a generic term by itself cannot receive trademark protection, an

26  arbitrary term that is combined with generic or descriptive terms can still be

27  protected. *See, e.g., Official Airline Guides, Inc. v. Goss,* 6 F. 3d 1385, 1392 (9th

28  Cir. 1993). "The validity and distinctiveness of a composite trademark is

1 determined by viewing the trademark as a whole, as it appears in the marketplace."
2 *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d
3 902, 913 (9th Cir. 1995) (quoting *Official Airline Guides*, 6 F.3d at 1392.)  "A
4 court may not review the validity of a composite-term trademark by dissecting the
5 term and reviewing the validity of its component parts individually." *Id*.

### (iii)   Iovate's Product is Likely to Cause Confusion with ORGAIN ORGANIC PROTEIN

8 For brevity, Orgain notes that the legal standard for demonstrating likelihood
9 of confusion (i.e., the *Sleekcraft* factors) is the same for trademark as it is for trade
10 dress provided above.

### 3.   Claim IV:  Unfair Competition Under Cal. Bus. & Prof. Code §17200

13 To prevail on its claim for unfair competition, Orgain will demonstrate that
14 (a) Iovate has engaged in an unlawful, unfair or fraudulent business act or practice,
15 and/or unfair, deceptive, untrue or misleading advertising; and (b) Orgain has
16 suffered direct financial injury as a result of Orgain's unlawful business practices.
17 *See* California Business and Professions Code § 17200; *Nat'l Rural Telecomm.*
18 *Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003); *Cell-Tech*
19 *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Ca. Rptr. 2d 548, 560-61, 20 Cal. 4th
20 163. 180 (1999) (noting greater flexibility under the UCL to afford equitable
21 relief).

22 In a case involving unauthorized use of a trademark and/or trade dress "[t]he
23 ultimate test for unfair competition is exactly the same as for trademark
24 infringement: whether the public is likely to be deceived or confused by the
25 similarity of the marks."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175,
26 1178 (9th Cir. 1988). Bearing that in mind, California's unfair competition statute
27 is disjunctive, meaning liability exists for unlawful, unfair, **or** fraudulent acts. *Nat'l*
28 *Rural Telcoms.,* 319 F. Supp. at 1074 (emphasis added). California courts have

1  defined 'unfair' broadly to provide courts with "maximum discretion." *Id.* at 1075.

2  "The 'test' to determine an 'unfair' practice is whether the gravity of the harm to

3  the victim outweighs the utility of the defendant's conduct." *Id*. Likewise, "[a]

4  business practice is 'fraudulent' if 'members of the public are likely deceived.'"

5  *Id*. at 1077.

6  　　　The end result is that, regardless of whether or not Orgain demonstrates that

7  it has a protectable trade dress or a protectable trademark, Orgain may still

8  demonstrate Iovate's unfair competition if it shows that Iovate's products "would

9  confuse consumers because of the similarity in the shape of the logo and the use of

10  a name that is similar to [Orgain's trade dress]." *McGurr v. N. Face Apparel*

11  *Corp.*, 2021 U.S. Dist. LEXIS 196568, at *11-14 (C.D. Cal. Aug. 27, 2021)

12  (noting that even if plaintiff had no trademark claim, defendant's conduct could

13  still be considered fraudulent under the third prong of the UCL if members of the

14  public are likely to be deceived.)

15  　　　**4.  Claim V: False Advertising Under Cal. Bus. & Prof. Code §17500**

16  　　　To prevail on this claim, Orgain will demonstrate that:

17  　　　(i)　　Iovate has made an untrue or misleading statement;

18  　　　(ii)　　that is known to be untrue or misleading; and

19  　　　(iii)　　there is a likelihood that members of the public are deceived.

20  *See Momento, Inc. v. Seccion Amarilla USA*, U.S. Dist. LEXIS 62664 *2 -3  (N.D.

21  Cal. July 6, 2009).

22  　　　**5.  Claim VI: Common Law Trademark/Trade Dress Infringement**

23  　　　**and Unfair Competition**

24  　　　The Ninth Circuit has consistently held that common law unfair competition

25  claims are "substantially congruous" to Lanham Act claims. *See Enesco Corp. V.*

26  *Price/Costco Inc.*, 146 F.3d 1083, n. 1 (9th Cir. 1998). Common law trademark

27  infringement requires the same showing of likelihood of confusion needed to prove

28  a federal claim for trademark infringement. *See Century 21*, 846 F.2d at 1181.

Thus, Orgain must prove the same elements discussed above in subsection (1) for its common law trademark and trade dress claims and unfair competition claims.

### C. Brief Description of Key Evidence in Support of Orgain's Claims.

#### 1. Claim I: Trade Dress Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)

Documentary and testimonial evidence will establish that the Orgain Trade Dress is distinctive, is not functional, and that Iovate has caused a likelihood of confusion, including through actual confusion.

##### a.    Orgain's Trade Dress is Inherently Distinctive.

The evidence at trial will demonstrate that the Orgain Trade Dress, taken as a whole, is inherently distinctive. Documentary and testimonial evidence will establish that the Orgain Trade Dress stands out in a very crowded field of plant-based protein products. Indeed, the evidence will show that alternative packaging designs are limitless and that among the hundreds of different possibilities, not a single plant-based protein product on the market incorporates all of the Orgain Trade Dress—except for Iovate's product. That evidence will demonstrate that the Orgain Trade Dress is not a mere refinement of a common trade dress, particularly when evaluating the many different trade dresses that are used in the marketplace.

While Iovate will improperly attempt to dissect the trade dress, documentary and testimonial evidence will establish that the Orgain Trade Dress is an arbitrary arrangement of various elements. Iovate's recitation of over 140 products, some of which may include individual elements of the Orgain Trade Dress, supports Orgain's position that the Orgain Trade Dress is not common, but is inherently distinctive.

##### b.    Orgain's Trade Dress Has Acquired Secondary Meaning.

In a first limited release of its infringing product, Iovate adopted a portion of the Orgain Trade Dress by no earlier than October 31, 2015, almost two years after Orgain's first product was introduced to the market.

1    No doubt that Orgain's approximately $40 million in sales, during these two

2    years, motivated Iovate to copy Orgain's success. Iovate made its final move to

3    adopt Orgain's unique black font in July 2017, three years after Orgain's

4    introduction of the Orgain Trade Dress and Mark. Evidence will show that between

5    2014 and 2015 Orgain spent well over $13,000,000 promoting its products to

6    consumers with total sales of over $98,000,000. Evidence will also show that the

7    Orgain Trade Dress enjoyed sales of at least $56,000,000, meaning more than half

8    of the promotional expenditures, or over $7,000,000, can be attributed to

9    promotion of the Orgain Trade Dress. Documentary and testimonial evidence will

10   establish the effect of Orgain's significant mass-marketing and the attendant reach

11   to consumers that generated consumer recognition of the Orgain Trade Dress and

12   Mark. Evidence will also demonstrate the exclusivity of the Orgain Trade Dress in

13   the plant-based protein market. In addition, documentary and testimonial evidence

14   establishes that at least 36% of customers identify the Orgain Trade Dress as

15   emanating from a single source. Discussed further below, evidence of actual

16   consumer confusion and Iovate's copying will also establish that the Orgain Trade

17   Dress was distinctive in the minds of consumers before Iovate's various stages of

18   copying.

19          **c.     The Orgain Trade Dress Is Not Functional.**

20          The evidence demonstrates that the Orgain Trade Dress is not the result of a

21   simple or inexpensive method of manufacture, nor does it make the product more

22   usable to the consumer. Moreover, Orgain's advertising never touts the trade dress

23   as having a useful advantage. The Orgain Trade Dress is not a simple presentation

24   of patterns or colors, but a unique combination of many elements arranged in an

25   arbitrary and distinctive manner.

26          Iovate's primary response is to argue that the "main elements" of Orgain's

27   trade dress are functional and that, as a result, the combination of elements of

28   Orgain's entire trade dress should be deemed functional. This argument is flawed

for at least two reasons. First, there is no evidence that the "main elements" of the Orgain Trade Dress are "essential to the use or purpose" of the product or that they "affect the cost or quality of the article."  There is likewise no evidence that exclusive use of any of these "main elements," either individually, or in combination, puts Iovate at any "significant non-reputation-related disadvantage." Second, even if the individual "main elements" were functional by themselves (which they are not), that would not render the entire trade dress functional.

The weakness of Iovate's position is demonstrated by an extension of its own logic. According to Iovate, the only non-functional component on its packaging is the term Purely Inspired. As such, one could substitute a different brand for Purely Inspired to avoid infringement. Below is an extension of Iovate's logic trading the Purely Inspired house brand with Iovate's "main competitors."

   

The end result of Iovate's logic is absurd. The record evidence will demonstrate that the Orgain Trade Dress is not functional.

### d.    The Iovate Label is Highly Similar to the Orgain Trade Dress.

The jury's side-by-side comparison of the infringing product against Orgain's trade dress will easily demonstrate the similarity between the products at issue. Below are a few simple examples that the jury will consider.

   



In addition, documentary and testimonial evidence will place Iovate's near identical copy of Orgain in context. Documentary and testimonial evidence will demonstrate that there is virtually an endless amount of product designs that are available to Iovate and scores of competitive plant-based protein powders and shakes that use different trade dress. Evidence will show that Iovate's choice to look like Orgain is no coincidence. Rather, it was a conscious, calculated decision.

**e.      The Parties' Products Are Identical and Sold and Marketed in Identical Channels of Trade.**

It is undisputed that the parties' respective products are both plant-based protein products competing for the exact same customer. There is also no dispute that the products are marketed and sold through the same channels of trade and often appear side-by-side on store shelves.

**f.      Consumers Do Not Exercise a High Degree of Care.**

Documentary and testimonial evidence will establish that consumers of plant-based protein products are no different than the average nutritional supplement consumer. Indeed, consumers lead busy lives and the documentary and testimonial evidence will establish that the powder products-at-issue are sold for less than $20 at stores like Walmart and the RTD products are sold for around $10 for a pack of 4. Documentary and testimonial evidence will establish that these products are not luxury purchases or products sold only in boutiques or other specialty shops. They are sold through the mass market and purchased by all consumers interested in plant-based products.

ORGAIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (L.R 16-4)

1        **g.**     **Actual Confusion is Overwhelming.**

2       The evidence of actual confusion in this case is stacked high and continues

3 to grow. Scores of consumers have posted reviews on Amazon.com for the

4 infringing product believing it is Orgain; consumers have called Orgain to

5 complain about an Orgain product only to learn that they had purchased the

6 infringing product; and consumers or social media influencers posted pictures of

7 the infringing product believing the product to be Orgain. Moreover, parcel

8 delivery services, professional colleagues of Orgain employees, and family

9 members of Orgain employees have likewise been confused. In addition, two

10 different professional marketing companies incorrectly placed marketing materials

11 for the infringing product on Orgain products and vice versa. Lastly, the direct

12 evidence of actual confusion is bolstered by the expert report of Hal Poret who

13 found net trade dress confusion levels ranging from between 17% and 30% in three

14 different surveys.

15        **h.**     **Iovate Has Copied the Orgain Trade Dress.**

16       The evidence of Iovate's copying in this case is significant. Documentary

17 and testimonial evidence will establish that Iovate's *modus operandi* is to look for

18 market trends and capitalize off of them. It will demonstrate that Iovate takes no

19 thought as to whether any new product design might infringe another's trademark

20 or trade dress. Rather, Iovate's design focus is whether the product label resonates

21 with consumers. Orgain's label had already been shown to resonate with

22 consumers and the evidence will demonstrate that Iovate specifically tested the

23 Orgain Trade Dress with consumers before it adopted a confusingly similar label.

24

25       Based on previous arguments Iovate has made, Orgain anticipates that Iovate

26 will counter by stating that it could not have copied Orgain because Iovate did not

27 really care about Orgain or that Orgain was really only a peripheral concern to

28 them. But evidence will demonstrate the contrary. Indeed, evidence will show that

Iovate was obsessed with Orgain and its products, conducting taste test after taste

test in order beat what it thought consumers considered to be the gold standard. In numerous different consumer surveys, Iovate repeatedly investigated consumer perception of Orgain and its various products and identified Orgain as its leading competitor.

### 2. Claim III: Trademark Infringement, Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(A)

Documentary and testimonial evidence will establish that the Mark is distinctive and that Iovate has caused a likelihood of confusion, including through actual confusion. Much of the same evidence that Orgain will rely on to demonstrate Claim I above will be used to prove its claim for trademark infringement.

#### a. Orgain owns the ORGAIN ORGANIC PROTEIN Mark.

For brevity, Orgain notes that the evidence for demonstrating ownership is the same for the trademark as it is for the trade dress provided above.

#### b. ORGAIN ORGANIC PROTEIN is Protectable

Documentary and testimonial evidence will show that ORGAIN is a fanciful mark that is inherently distinctive. ORGAIN ORGANIC PROTEIN is a composite mark that must viewed as a whole and cannot be dissected to evaluate the validity of its component parts. Under this standard, and based on the evidence, the composite mark ORGAIN ORGANIC PROTEIN is inherently distinctive and protectable.

#### c. Iovate's Product is Likely to Cause Confusion with ORGAIN ORGANIC PROTEIN.

For brevity, Orgain notes that the evidence for demonstrating likelihood of confusion is the same for the trademark as it is for the trade dress provided above.

### 3. Claim IV: Unfair Competition Under Cal. Bus. & Prof. Code §17200

Iovate's use of a product label that is similar to Orgain's product label is

likely to cause confusion, mistake, or deception among consumers as to the source of Iovate's plant-based protein powders and shakes. While it is not required to demonstrate that it has protectable trade dress or trademarks to succeed on this claim, Orgain will rely on the same evidence as briefly described supra in Sections II(C)(1)(a)-(h) and described infra in Section III(B).

### 4. Claim V: False Advertising Under Cal. Bus. & Prof. Code §17500

For its California claim for false and misleading advertising, Orgain will rely upon the evidence described above with respect to its Lanham Act claim. *See* supra, Sections II(C)(1)(a)-(h).

### 5. Claim VI: Common Law Trademark/Trade Dress Infringement and Unfair Competition

For its common law claims, Orgain will rely upon the evidence described above with respect to its Lanham Act claim. *See* supra, Sections II(C)(1)(a)-(h).

### D. Anticipated Evidentiary Issues

While objections to exhibits and testimony will likely occur at trial, at present, Orgain is not aware of specific evidentiary issues that may arise at trial except for those already identified in the parties' pending Daubert motions and Motions in Limine.

## III. AFFIRMATIVE DEFENSES AND ORGAIN'S RESPONSE.

Although Iovate listed numerous affirmative defenses in its Answer to the FAC, Orgain understands that Iovate intends to pursue the following affirmative defenses. Orgain also notes its response to each of these defenses.

### Defense 1: Failure to State a Claim

To establish that Orgain has not stated a claim upon which relief can be granted, Iovate must satisfy Rule 12(b)(6), Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and demonstrate that if all facts taken in Orgain's complaint are true, Orgain fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. See *Clegg v. Cult Awareness Network*, 18 F.3d 752,

754 (9th Cir. 1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

**Orgain Response to Defense 1**. Orgain's claims have survived two motions to dismiss and one motion for summary judgment.  Iovate moved to dismiss the original pleadings under Rule 12(b)(6). The Court granted that motion with leave to amend. After amendment, Iovate again moved to dismiss. Having reviewed the motion and pleadings, the Court denied Iovate's motion. Orgain's pleadings adequately state the element of its claim; namely, that it owns protectable trademarks and trade dress rights, that Iovate adopted a confusingly similar mark and dress without Orgain's consent, that consumers are likely to be confused as a result, and that Orgain has been damaged and seeks injunctive relieve and money damages. Orgain has also specified the basis for its false advertising and unfair competition claims. Orgain's First Amended Complaint alleges more than enough facts to state a claim for relief that is plausible on its face. Iovate's motion for summary judgment on related claims was also denied.

**Defense 2: Generic Term(s)**

This is not an affirmative defense because Iovate does not need to prove genericness. Rather, because the trademark/dress at issue is not registered, the burden is on Orgain to prove that the marks/dress is protectable, i.e., distinctive. This can be done through proof of inherent distinctiveness or acquired distinctiveness/secondary meaning. "In cases involving properly registered marks, a presumption of validity places the burden of proving genericness upon the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999).

**Orgain Response to Defense 2.** While not an affirmative defense for Iovate, at trial Orgain will demonstrate that the pleaded marks and trade dress are protectable, i.e., distinctive. This will be done through proof of inherent distinctiveness, acquired distinctiveness/secondary meaning and via proof that Iovate has copied Orgain and has caused actual confusion.

### Defense 3: Non-Distinctiveness/Lack of Secondary Meaning

As with Defense No. 2, this is not an affirmative defense because Iovate does not carry the burden of proof. The burden is on Orgain to show that the trademark/dress is protectable.

**Orgain Response to Defense 3**. As with Defense No. 2, this is not an affirmative defense because Iovate does not carry the burden of proof. Evidence presented at trial, however, will demonstrate that the pleaded marks and trade dress are distinctive, either inherently or through secondary meaning and that Iovate has copied Orgain and has caused actual confusion. *See* supra II(B)(1)(a)-(b).

### Defense 4: Functionality

This is also not an affirmative defense. Under § 43 of the Lanham Act, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3).

**Orgain Response to Defense 4**. This is also not an affirmative defense. Evidence presented at trial, however, will demonstrate that the Orgain Trade Dress is not functional. *See* supra II(B)(1)(c).

### Defense 5: Fair Use.

When applying the "classic fair use" defense, "[a] junior user is always entitled to use a descriptive term **in good faith** in its primary, descriptive sense other than as a trademark." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). To prevail here, Iovate must show that its use of the Orgain Trade Dress or a confusingly similar imitation is used (1) other than as a trademark or brand, (2) descriptive of its goods, and (3) in good faith. 15 U.S.C. § 1115(b)(4).

### a. Use Other than as a Mark.

A fair use must be a use other than as a trademark. 15 U.S.C. § 1115(b)(4). A trademark is used "to identify and distinguish . . . goods . . . from those manufactured or sold by others and to indicate the source of the goods." *Id*. § 1127. "To determine whether a term is being used as a mark, we look for indications that the term is being used to associate it with a manufacturer," and "whether the term is used as a symbol to attract public attention." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1040 (9th Cir. 2010) (internal quotation marks omitted). Courts also consider "whether the allegedly infringing user undertook precautionary measures . . . to minimize the risk that the term will be understood in its trademark sense." *Id*.

**Orgain Response to Defense 5a.** The record evidence will demonstrate that Iovate's infringing trade dress is being used as an indicator of source. Meaning, it is being used as a trademark. The elements of Iovate's infringing trade dresses, taken as a whole, arranged and located on the product label in order to indicate the source of the product, not simply to convey information about the product. The manner in which these elements are used are typical of brand use on product packaging.

### b. Mark Must Be in Its Descriptive Sense

To prevail on fair use, Iovate must show that it used the Orgain Trade Dress "in its primary, descriptive sense." *Fortune Dynamic*, 618 F.3d at 1041 (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 906 (9th Cir. 2003) (alteration omitted)); *see* 15 U.S.C. § 1115(b)(4). While courts "accept some flexibility in what counts as descriptive," *Fortune Dynamic*, 618 F.3d at 1042, "the scope of the fair use defense varies with . . . the descriptive purity of the defendant's use and whether there are other words available to do the describing." *Id*. at 1041. Even when "there [is] some evidence of descriptive use, [a jury] could still reasonably

ORGAIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (L.R 16-4)

1   conclude that [a defendant's] lack of 'precautionary measures'" outweighs such

2   evidence. *Id*. at 1042.

3       **Orgain Response to 5b.** The elements of Iovate's infringing trade dresses,

4   as a whole, are not merely informational. The manner in which colors are chosen,

5   shapes arranged, and the size and placement of fonts on the label are not required

6   to convey information to the consumer. Record evidence will also show hundreds

7   of competing plant-based protein products do not use the Orgain Trade Dress or

8   any colorable imitation demonstrating that there are many other alternatives

9   available to Iovate. Record evidence will also demonstrate that Iovate did not

10  attempt to minimize any likelihood of confusion with disclaimers or other

11  indicators that would minimize confusion.

12      **c. Mark Must Be Used in Good Faith**

13      Iovate must also show that it used the Orgain Trade Dress in good faith. 15

14  U.S.C. § 1115(b)(4). When considering forward confusion, this element "involves

15  the same issue as the intent factor in the likelihood of confusion analysis"; that is,

16  "whether defendant in adopting its mark intended to capitalize on plaintiff's good

17  will." *Fortune Dynamic*, 618 F.3d at 1043; *Marketquest Grp., Inc. v. BIC Corp.*,

18  862 F.3d 927 (9th Cir. 2017).

19      **Orgain Response to 5c.** Orgain will demonstrate at trial that Iovate is not

20  using the infringing trade dress in good faith. Record evidence demonstrates that

21  Iovate was losing marketing share with its plant-based protein and/or attempting to

22  gain more market share in the U.S. It looked for products that were trending in the

23  plant-based protein market for inspiration and found Orgain. It then tested

24  consumer perception and acceptance of the Orgain Trade Dress before adopting its

25  first infringing label. After that, with full knowledge of Orgain and its trade dress,

26  Iovate continued to copy Orgain by making itself even closer. Iovate was aware of

27  the confusion it was creating in the marketplace and took no action to correct it.

28  Indeed, when faced with the opportunity to change its label to address the

36

1  confusion it created, it decided to disregard the recommendations from the design

2  firm it hired. Instead, it made changes to its product that did nothing to ameliorate

3  the confusion.

4      **Defense 6: Statute of Limitations**

5        Because of the equitable character of the statute of limitations defense, a

6  party guilty of unclean hands, such as deliberate infringement, is barred from

7  asserting the defense. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829,

8  841 (9th Cir. 2002). In the absence of willfulness, and if Iovate can otherwise show

9  that it is entitled to any equitable relief, it might seek to equitably "borrow" the

10  statute of limitations from analogous state law limitations periods. *Id*. at 836. The

11  Ninth Circuit has analogized Lanham Act claims to fraud, which is subject to a

12  three-year statute of limitations in California. *Id*. at 838. California Unfair

13  Competition Law claims are subject to a four-year statute of limitations. Cal. Bus.

14  & Prof. Code § 17208.

15      **Orgain Response to Defense 6.** Record evidence demonstrates that Iovate's

16  first infringing product was launched no earlier than October 31, 2015. This

17  lawsuit was filed on July 18, 2018 which is before any three year period Iovate

18  may attempt to argue is applicable here. Orgain can challenge the requested

19  application of a limitations period if it can show that the lawsuit was motivated by

20  progressive encroachment. However, even if a limitations period applied, it would

21  only bar damages recovery from prior to the limitations period. *See Jarrow*

22  *Formulas, Inc.*, 304 F.3d at 837. Given that the Complaint was filed on July 18,

23  2018, the statute of limitations is not a bar to any damages sought by Orgain.

24      **Defense 7: Laches**

25        To prevail on this claim, Iovate must prove by a preponderance of the

26  evidence that:

27      (1) Orgain delayed in filing suit;

28      (2) The delay in filing suit was unreasonable; and

(3) Iovate would suffer prejudice caused by the delay if the suit were to continue. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d at 838..

**Orgain Response to Defense 7.** Evidence at trial will demonstrate that actual confusion was first reported to Orgain in August of 2016. That actual confusion slowly gained momentum as more and more of the infringing product was sold into the marketplace and more and more consumers of Orgain products encountered Iovate's infringing product. By 2017 and 2018, it was apparent that the actual confusion demonstrated a significant problem. Orgain conducted its pre-filing due diligence and filed this lawsuit on July 18, 2018. Iovate has neither relied upon nor been prejudiced by any alleged inaction by Orgain and has no evidence that demonstrates otherwise.

**Defense 8: Waiver, Acquiescence, and Estoppel**

**a. Waiver**

Iovate must show that Orgain intentionally relinquished a right, or that its acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991).

**b. Acquiescence**

A party asserting estoppel by acquiescence must show:

(1) an unreasonable and inexcusable delay by the opposing party,

(2) inducing the belief that the opposing party has abandoned its claim,

(3) affirmative conduct inducing the belief that the opposing party has abandoned its claim, and

(4) detrimental reliance. *E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994).

**c. Estoppel**

A party asserting that claims are barred by the doctrine of estoppel must show that:

1    (1) the opposing party knew the facts,

2    (2) the opposing party intended that its conduct would be relied upon,

3    (3) the asserting party was ignorant of the true facts, and

4    (4) the asserting party detrimentally relied upon the opposing party's

5    conduct. *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir.1994).

6    **Orgain Response to Defense 8.** Orgain never once agreed to permit Iovate

7    to use an infringing mark or dress in connection with a competing plant-based

8    protein. Orgain timely filed a complaint after assessing the infringement and

9    resulting actual confusion in the marketplace. Orgain has never abandoned any of

10   its claims. Iovate has neither relied upon nor been prejudiced by any alleged

11   inaction by Orgain, as it has never sought Orgain's authorization to use its

12   infringing trade dress.

13       **Defense 9: Innocent Infringement.**

14       While considered when determining remedies, a claim of innocent

15   infringement is not an affirmative defense. The Ninth Circuit has noted "[w]e have

16   previously emphasized the minimal importance of the intent factor: 'Importantly,

17   an intent to confuse customers is not required for a finding of trademark

18   infringement.' In fact, in *Brookfield*, we found that the defendant had no

19   knowledge, actual or constructive, of the plaintiff's mark yet nevertheless ruled

20   against the defendant." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208

21   (9th Cir. 2000) (quoting *Brookfield Commc'ns, Inc.,* 174 F.3d at 1059).

22       **Orgain Response to Defense 9.** While not an affirmative defense, Orgain

23   will present evidence that Iovate's infringement is far from innocent. As noted

24   above, evidence will demonstrate that Iovate intentionally copied Orgain's trade

25   dress hoping to benefit from the goodwill Orgain had established in the

26   marketplace. More specifically, Iovate identified Orgain as a successful product

27   outside of Walmart, and then copied it to make a less expensive look-a-like

28

product, hoping to benefit from the pre-existing consumer recognition of the
Orgain Trade Dress.

### Defense 10: Defendant's Use of its Own Mark

To the extent Iovate alleges that the use of its house marks on its products
precludes a finding of likelihood of confusion, this is not an affirmative defense.
The role of house marks on likelihood of confusion is considered when analyzing
the confusion factors. Specifically, this is considered by the jury when analyzing
the similarity of the marks. See, e.g., *Matrix Motor Co. v. Toyota Jidosha
Kabushiki Kaisha*, 290 F. Supp. 2d 1083 (C.D. Cal. 2003); *CytoSport, Inc. v. Vital
Pharms., Inc.*, 617 F. Supp. 2d 1051, 1068 (E.D. Cal. 2009) (use of house mark
was not sufficiently prominent or distinctive to mitigate likelihood of confusion).

**Orgain Response to Defense 10.** While also not an affirmative defense,
record evidence will demonstrate that Iovate's use of the house mark "Purely
Inspired" does nothing to curb the rampant actual consumer confusing in the
marketplace, particularly where the remainder of its product packaging is virtually
identical to Orgain.

### Defense 11: Unclean Hands

A party asserting an unclean hands defense, "must demonstrate that [the
opposing party's] conduct is inequitable and that the conduct relates to the subject
matter of its claims." *Brother Records,* 318 F.3d at 909 (quoting *Levi Strauss &
Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997)).

**Orgain Response to Defense 11.** Record evidence will demonstrate that
Orgain's acts are far from inequitable. Indeed, Orgain is the classic success story
resulting from years of personal toil and ingenuity. None of Orgain's acts that
Iovate may complain about give rise to a presumption that Orgain should not be
provided with the remunerative and injunctive relief it seeks from the Court.

### Defense 12: Lack of Irreparable Harm

This is not an affirmative defense. Iovate does not need to prove that Orgain

ORGAIN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (L.R 16-4)

1   did not suffer irreparable harm. Prior to the recent Trademark Modernization Act,

2   Orgain would have been required to demonstrate that it has suffered irreparable

3   harm. "Evidence of loss of control over business reputation and damage to

4   goodwill c[an] constitute irreparable harm." *2Die4Kourt v. Hillair Capital Mgmt.,*

5   *Ltd. Liab. Co.*, 692 F. App'x 366 (9th Cir. 2017) (quoting *Herb Reed Enters., LLC*

6   *v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013)).

7        The Trademark Modernization Act remedied a prior circuit split stating

8   specifically "that a trademark plaintiff seeking an injunction shall be entitled to a

9   rebuttable presumption of irreparable harm upon a finding of a violation subsection

10   (a), (c), or (d) of section 43." 15 USCS § 1125. While the Ninth Circuit has yet to

11   rule on this recent update to the Lanham Act, courts in the Central District have

12   noted the change to the law and the presumption of irreparable harm. *See, Nintendo*

13   *of Am., Inc. v. Storman*, 2021 U.S. Dist. LEXIS 148119 *22-23 (C.D. Cal. August

14   5, 2021).

15        **Orgain Response to Defense 12.** This is not an affirmative defense.

16   Nonetheless, record evidence will demonstrate that rampant actual consumer

17   confusion has caused Orgain to lose control of its brand. Consumers think they are

18   buying Orgain when they are actually buying an inferior Iovate product. When

19   they are unsatisfied with the product, they give negative reviews dissuading other

20   consumers from purchasing Orgain in the future. The utter inability of Orgain to

21   stop Iovate's haphazard theft of Orgain's identity demonstrates irreparable harm.

22   **Defense 13: Adequacy of Remedy at Law**

23        This is also not an affirmative defense. "Given that a Plaintiff seeking

24   equitable relief bears the burden of proof with regard to the adequacy of remedies

25   at law, it would be incongruous to permit an affirmative defense that shifts that

26   burden to Defendant. Accordingly, the court strikes JHS's ninth affirmative defense

27   as invalid." *Gibson Brands Inc. v. Viacom Int'l Inc.*, No. CV 12-10870 DDP

28   (AJWx), 2016 U.S. Dist. LEXIS 203089 (C.D. Cal. Sep. 29, 2016).

**Orgain Response to Defense 13.** This is also not an affirmative defense. However, the evidence presented at trial will demonstrate that Orgain is entitled to money damages and permanent injunctive relief against Iovate for its unlawful acts and the concomitant harm it continues to cause Orgain.

### Defense 14: Failure to Mitigate Damages

The party alleging a failure to mitigate bears the burden of showing that the damaged party failed to make reasonable efforts or reasonable expenditures to mitigate its damages. *Cont'l Ins. Co. v. Ursin Seafoods, Inc.*, No. 92-35023, 1992 U.S. App. LEXIS 25488 (9th Cir. Oct. 6, 1992).

**Orgain Response to Defense 14:**  Short of changing its brand entirely to distance itself from a bad faith copyist, evidence presented at trial will demonstrate that Orgain went to great lengths to try to stop the widespread consumer confusion caused by Iovate's unlawful acts. Indeed, record evidence will demonstrate that Orgain learned that third party vendors were placing promotional materials and coupons in Wal-Mart stores on Iovate's infringing products instead of Orgain's products. Orgain attempted to curb that by sending very specific instructions to those vendors not to place it on the Iovate product. Those instructions included photos of the infringing product to avoid. Unfortunately, the confusion continued because the products look so similar and are sold side-by-side on the same store shelves.

### Defense 15: Duplicate Claims

This claim is also not an affirmative defense. Orgain has brought claims under the Lanham act and California law and is entitled to bring both claims. To the extent Iovate is alleging that the duplicative claims do not permit for double recovery, Orgain agrees. See, *Chanel, Inc. v. Doan*, No. C 05-03464 VRW, 2007 U.S. Dist. LEXIS 22691 (N.D. Cal. Mar. 13, 2007) and *Mockler v. Multnomah Cty.*, Nos. 96-35895, 96-36122, 1998 U.S. App. LEXIS 6641 (9th Cir. Mar. 31, 1998).

**Orgain Response to Defense 15.** This claim is also not an affirmative defense.

### Defense 16: Third-Party Use

This is also not an affirmative defense. This issue was articulated very clearly by the court in *Scat Enters. v. FCA US Ltd. Liab. Co.*:

> "Plaintiff argues that Defendant's affirmative defenses and corresponding parts of its First Counterclaim for failure to police, acquiescence, and waiver fail because third-party use of a mark is not a full defense to Plaintiff's trademark infringement claim. This Court agrees. Defendant is correct in stating that evidence of third-party use is relevant to certain issues in this case—for example, evidence of third-party use is a factor in determining whether a likelihood of confusion exists between the parties' marks. However, third-party use by itself does not provide an affirmative defense to Plaintiff's trademark infringement claim. Accordingly, Defendant's affirmative defenses and corresponding parts of its First Counterclaim, for failure to police, acquiescence, and waiver, fail."

No. CV 14-7995-R, 2017 U.S. Dist. LEXIS 207149 (C.D. Cal. June 8, 2017).

**Orgain Response to Defense 16.** This is also not an affirmative defense. However, evidence presented at trial will demonstrate that Iovate is the only competitor using all of the elements of the Orgain Trade Dress. The evidence will demonstrate that there are myriad different design options available to manufacturers of plant-based protein powders and that no one, except Iovate, has come close to the Orgain Trade Dress. Indeed, the third-party use will demonstrate that the Orgain Trade Dress is unique in the plant-based market.

### Defense 17: No Punitive Damages

While not an affirmative defense to Orgain's claims, courts consider several factors when determining whether to award punitive damages. An award of punitive damages must conform to federal and state due process norms. "To do so, courts consider punitive damages in light of 'guideposts' articulated by the United States and California Supreme Courts." *Oakley, Inc. v. McWilliams*, No. CV 09-

43

1  07666 DDP (RNBx), 2012 U.S. Dist. LEXIS 149604, at *11 (C.D. Cal. Oct. 17,

2  2012). "The constitutional 'guideposts' for reviewing courts are: '(1) the degree of

3  reprehensibility of the defendant's misconduct; (2) the disparity between the actual

4  or potential harm suffered by the plaintiff and the punitive damages award; and (3)

5  the difference between the punitive damages awarded by the jury and the civil

6  penalties authorized or imposed in comparable cases." *Id.* (quoting *State Farm*

7  *Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). This analysis has been

8  similarly applied by the California Supreme Court. See *Johnson v. Ford Motor*

9  *Co.*, 35 Cal. 4th 1191, 1201 (2005); *Simon v. San Paolo U.S. Holding Co., Inc.*, 35

10  Cal. 4th 1159, 1172 (2005).

11      **Orgain Response to Defense 17.** This is also not an affirmative defense.

12  However, the evidence at trial will demonstrate that punitive damages are

13  appropriate here. Record evidence demonstrates that Iovate was losing marketing

14  share with its plant-based protein and/or attempting to gain more market share in

15  the U.S. It looked for products that were trending in the plant-based protein market

16  for inspiration and found Orgain. It then tested consumer perception and

17  acceptance of the Orgain Trade Dress before adopting its first infringing label.

18  After that, with full knowledge of Orgain and its trade dress, Iovate continued to

19  copy Orgain by making itself even closer. Iovate was aware of the confusion it was

20  creating in the marketplace and took no action to correct it. Indeed, when faced

21  with the opportunity to change its label, it decided to disregard the

22  recommendations from the design firm it hired and make changes to its product

23  that did nothing to ameliorate the confusion. Unless punitive damages are awarded

24  here, Iovate will simply continue to compete unfairly. In other words, as long as

25  Iovate can make a profit from infringing, it will continue to do so.

26      **IV.   BIFURCATION OF ISSUES (L.R. 16-4.3)**

27      In the interest of efficiency, and due to the absence of any unique circumstances

28  favoring bifurcation, all issues presently in the case that are triable by jury should

be tried to the same jury at the same time. If additional issues are subsequently introduced into the case, Orgain reserves the right to request that some or all of these new issues be tried separately.

## V.     JURY TRIAL (L.R. 16-4.4)

### A. Legal Claims

Orgain timely demanded and is entitled to a trial by jury on the issues not otherwise to be determined by the Court. Issues for the jury to decide include whether the Orgain Trade Dress is protectable, whether Iovate's trade dress and product design infringes the Orgain Trade Dress and the ORGAIN ORGANIC PROTEIN Mark, whether Iovate's conduct is false and/or misleading, whether Iovate unfairly competed by virtue of its infringement and/or false and/or misleading advertising, and the damages owed to Orgain as a result of Iovate's unlawful acts.

### B. Equitable Claims

Some of Orgain's claims are equitable in nature rather than legal, and are therefore issues to be determined by the Court. For example, "any decision concerning the awarding of an accounting of profits remedy should remain within the discretion of the trial court." *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir.1982). The district court has discretion to increase the profit award above the net profits proven if "the court shall find ... the amount of the recovery ... inadequate." 15 U.S.C. § 1117(a). The Court applies "principles of equity," (*id.*), and ensures that the defendant "may not retain the fruits, if any, of unauthorized trademark use or continue that use [and the] plaintiff is not ... [given] a windfall," *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 918 (Fed. Cir. 1984). Moreover, equitable remedies are the only remedies available under California Business and Professions Code §§ 17200-17210 and 17500. *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cty.*, 9 Cal. 5th 279, 261 Cal. Rptr. 3d 713, 462 P.3d 461, 469 (Cal. 2020).

1    Notwithstanding, the Court may seek an advisory opinion with respect to

2 certain equitable issues including, but not limited to profits, enhanced damages and

3 willfulness. *See, e.g., Fahmy v. Jay-Z*, 2015 U.S. Dist. LEXIS 139298, *4 (C.D.

4 Cal. Oct. 9, 2015) ("[T]he Court believes that the assistance of a jury may be

5 helpful in determining the appropriate measure of profits to which plaintiff may be

6 entitled. Accordingly, the Court will have the issue of plaintiff's recovery of profits

7 presented to the jury and will treat the jury's verdict on this issue as advisory.").

8 Orgain believes that the Court should seek an advisory opinion on these issues.

9    Iovate has raised equitable defenses, including estoppel, laches and unclean

10 hands defenses. The factual support for these defenses and related equitable issues

11 are intricately intertwined with the legal issues in this case and, therefore, Orgain

12 submits that these equitable issues should be tried to the jury at the same time as all

13 other issues in the case. Orgain understands that the jury does not have the

14 authority to render a binding verdict on those select issues. However, Orgain

15 believes that the Court should seek an advisory opinion from the jury on these

16 issues.

17    **VI.    ORGAIN IS ENTITLED TO DAMAGES**

18    Orgain is entitled to damages adequate to compensate it for Iovate's

19 infringement, false advertising, and unfair competition. For the federal claims,

20 Orgain is entitled to (1) Iovate's profits on its sales of infringing ORGANIC

21 PROTEIN branded protein powders and shakes; (2) Orgain's damages, (3) the

22 costs associated with corrective advertising, and (4) the costs of the action. See 15

23 U.S.C. § 1117(a).

24    Under § 1117(a), a plaintiff may recover an infringers profits (1) as a

25 measure of the plaintiff's own damages; or (2) on a theory of disgorgement of the

26 defendant's unjustly obtained profits. See *Lindy Pen Co. v. Bic Pen Corp.*, 982

27 F.2d 1400, 1407 (9th Cir. 1993). The Act "confers a wide scope of discretion upon

28 the district judge in the fashioning of a remedy for a violation of the Act," *Maier*

*Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). When the defendant's profits are the measure of the plaintiff's losses, "[t]he plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty," which are presumed to be the result of the infringing activity. *Id.* at 1408. The burden then shifts to the defendant to show "which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Id.*[6] In the end, any "uncertainty in the amount of damages should be borne by the wrongdoer." *Adray v. Adry—Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995).

For the federal claims, the Court may award up to three times the damages amount found or assessed. *Id.* Enhanced damages may be based on a willful violation of the Lanham Act. *Id.* Orgain is also entitled to three times (1) Iovate's profits and (2) Orgain's damages pursuant to California state law. *See* Cal. Bus. & Prof. Code § 14340(a). The Court may also award exemplary damages of up to three times the damages amount for the state law claims. *See* Cal. Civ. Code § 3294.

The overwhelming evidence of Iovate's knowledge of the Orgain trade dress and its success before Iovate adopted its trade dress unequivocally demonstrates willful infringement. Iovate's persistence in its unlawful acts, even in the face of actual consumer confusion and Orgain's objections, supports Orgain's claim for damages, including corrective advertising damages. Orgain's fact and expert witnesses will testify regarding the damages to which Orgain is entitled under the law.

---

[6] *See also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("[T]he burden is upon [defendant] to prove that sales were demonstrably not attributable to the infringing mark.").

47

Orgain's claim for enhanced damages under 15 U.S.C. § 1117(a) and exemplary damages under California Civil Code § 3294 is supported by the evidence that Iovate is guilty of oppression, fraud or malice, in that Iovate copied Orgain's trade dress and continued its infringement with full knowledge that there was actual confusion in the marketplace based on the similarity between its packaging and Orgain.

## VII.   THE COURT SHOULD ENTER A PERMANENT INJUNCTION

At the termination of trial, Orgain will ask the Court to enter a permanent injunction against Iovate. Trademark law gives federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. § 1116; *see Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165,  1177 (C.D. Cal. 2007). Following those principles, a permanent injunction may be entered where the plaintiff shows: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,* 762 F.3d 867, 879-80 (9th Cir. 2014).

In trademark cases, pursuant to the Trademark Modernization Act, irreparable harm is presumed where a trademark plaintiff establishes that is a violation of subsections (a), (c), or (d) of section 43 [15 USCS § 1125]. While the Ninth Circuit has yet to rule on this recent change, courts in this Central District have noted the change to the law and the presumption of irreparable harm. *See Nintendo of Am., Inc. v. Storman*, 2021 U.S. Dist. LEXIS 148119 *22-23 (C.D. Cal. August 5, 2021). Orgain may also be shown through evidence of the loss of prospective customers, goodwill, or reputation. *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

48

Injunctive relief is the most appropriate remedy for trademark and unfair competition cases since there are no other adequate remedies. *Century 21 Real Estate Corp.*, 846 F.2d at 1180. Orgain has suffered and will continue to suffer irreparable injury to its goodwill. Iovate continues to market, promote, and sell its products in the U.S. resulting in consumer confusion. Accordingly, the lost opportunities and goodwill resulting from Iovate's continued infringement will cause irreparable harm to Orgain. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm.")

The balance of hardships tips strongly in Orgain's favor. If a permanent injunction is not issued, Iovate will continue to unlawfully trade on Orgain's goodwill. Orgain has and will continue to promote and protect its brands while Iovate, if not stopped, will unlawfully reap the benefits. In contrast, if a permanent injunction is issued, Iovate will be required to stop its unlawful activity and cease injuring Orgain. Orgain's hardships far outweigh any that could be alleged by Iovate. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). Lastly, the primary goal of trademark law is to protect consumers against deception. *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F. 2d 912, 918 (9th Cir. 1980). Entering a permanent injunction forbidding infringement will shield consumers against risk of further deception.

## VIII.  ATTORNEY'S FEES (L.R. 16-4.5)

Orgain seeks reimbursement of its attorney's fees pursuant to 15 U.S.C. § 1117 which provides that "[t]he court in exceptional cases may award reasonable attorney's fees to the prevailing party."  An exceptional case is one that involves evidence of malicious, fraudulent, deliberate or willful infringement, such as intent to capitalize on a plaintiff's mark. *See*, e.g., *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1427 (9th Cir. 2007). The overwhelming evidence of Iovate's willful

1  infringement of Orgain's trade dress justifies an award of Orgain's reasonable
2  attorney's fees. Orgain also seeks its costs of suit and other costs incurred in
3  connection with this action as a result of Iovate's infringement, false advertising,
4  and unfair competition.

5  **IX.   ABANDONMENT OF ISSUES**

6       Orgain has not abandoned any issues and reserves its right to pursue all
7  issues at trial and/or on appeal. Other than Claim II for ORGANIC PROTEIN,
8  which this Court ruled on during the summary judgment stage of this matter,
9  Orgain is pursuing all its pleaded claims.

11  DATED:  January 28, 2022          THORPE NORTH & WESTERN LLP

12                                    By: */s/ Jed H. Hansen*

14                                    Mark M. Bettilyon
                                      Peter M. de Jonge
15                                    Jed H. Hansen

16                                    VENABLE LLP
17                                    Daniel S. Silverman

18                                    *Attorneys for Plaintiff Orgain, Inc.*